PRESBYTERY OF THE COVENANT et al., Appellants,

v.

FIRST PRESBYTERIAN CHURCH of PARIS, INC., et al., Appellees.

No. 8438.

Court of Civil Appeals of Texas, Texarkana.

May 24, 1977.

Rehearing Denied July 5, 1977.

Charles W. Stuber, Smith, Smith, Dunlap & Canterbury, Dallas, for appellants.

Hardy Moore, Paris, J. D. McLaughlin, Fisher, McLaughlin & Harrison, Paris, for appellees.

CORNELIUS, Justice.

This controversy arose when a majority of the members of the First Presbyterian Church of Paris, Texas, sought to withdraw from the Presbyterian Church in the United States and affiliate with another group. The Presbytery of the Covenant, which had jurisdiction of the church at Paris, sought to prevent the withdrawing faction from taking possession and asserting ownership of the church property, and filed suit for declaratory judgment. The withdrawing faction, through its corporate entity, First Presbyterian Church of Paris, Inc., filed suit against the Presbytery of the Covenant and others in trespass to try title. The actions were consolidated and tried to a jury. Upon the jury verdict, judgment was rendered for the withdrawing faction. The Presbytery of the Covenant and those parties aligned with it have appealed. The parties will be designated as in the trial court—appellants as plaintiffs and appellees as defendants.

The judgment in appellees' favor was based upon jury findings to the following effect:

1. Prior to June 17, 1973 (the date of the attempted withdrawal), the Presbyterian Church in the United States, directly or through the Presbytery of the Covenant

and preceding presbyteries, represented and held out to the First Presbyterian Church of Paris U.S. that it owned its property and could make such disposition thereof as it desired.

2. The First Presbyterian Church of Paris U.S., prior to June 17, 1973, relied upon those representations in the acquisition or improvement of its properties.

3. But for those representations the First Presbyterian Church of Paris U.S. would not have expended its funds in acquiring or improving its properties.

4. The representations were not false.

5. The First Presbyterian Church of Paris U.S., on June 17, 1973, had a right to withdraw from the Presbyterian Church in the United States without the consent of the Presbytery of the Covenant.

6. The First Presbyterian Church of Paris U.S., upon withdrawal from the Presbyterian Church in the United States, had a right under the Constitution of the Presbyterian Church in the United States to take its property with it.

In the appeal plaintiffs assign twenty-nine points of error which contend generally that (1) there was no evidence or insufficient evidence to support the jury findings; (2) the judicatories of the Presbyterian Church in the United States have determined the matters in controversy adversely to defendants, and the civil courts, as well as the defendants, are bound thereby; (3) the trial court erred in admitting evidence of policy statements of the Presbyterian Church in the United States alleged to constitute representations because such involved the interpretation of ecclesiastical matters; and, (4) plaintiffs were entitled to judgment as a matter of law, the jury verdict notwithstanding. Defendants contend generally that (1) the Presbyterian Church in the United States is congregational rather than hierarchical as to property, thus leaving sole power of management and disposition with the local congregation free of control of the mother church, or (2) in any event, the Presbyterian Church in the United States and the Presbytery of the Cove-

nant are estopped under the jury findings to deny the local congregation the right to take the church property with it.

The Presbyterian Church in the United States (which will hereafter be referred to as PCUS) is governed according to an ascending order of ecclesiastical judicatories. These are: Church Sessions, Presbyteries, Synods, and the General Assembly. The Church Session is composed of individual Ruling Elders of a local congregation; the minister is also on the Session and serves as Moderator. Immediately superior to the Church Session is the Presbytery which is made up of member ministers and all the churches within a designated geographic area. Immediately superior to the Presbytery is the Synod which consists of all the churches within a specified geographic area of at least two presbyteries as well as the ministers who are members of the included presbyteries. Immediately superior to the Synod is the General Assembly which has authority over all PCUS churches in the country. PCUS is governed by a Constitution which consists of the Confession of Faith, the Larger and Shorter Catechisms, and the Book of Church Order. The Constitution delegates to the various church judicatories their respective areas of authority. The Presbytery is given power to review the records of Sessions, redress whatever the Session may have done contrary to order, and see that the Session observes the Constitution of the church. It also has power to see that the injunctions of the church judicatories are obeyed. The Presbytery alone has power to organize new churches, receive and dismiss churches, and dissolve churches, as well as to ordain, receive, dismiss, install, remove and judge ministers. Any individual who questions an action taken by any church judicatory or who disagrees with the decision rendered by it may appeal the action or decision to the immediately superior ecclesiastical tribunal.

Prior to June 17, 1973, there was but one First Presbyterian Church of Paris, and it was admittedly affiliated with, a member congregation of, and subject to the discipline and control of the PCUS and the Presbytery of the Covenant or its predeces-

sor presbyteries. It acquired all the real property involved here at a time when there was no disagreement over the church property and when all of its members, including those who later withdrew, were members of a PCUS congregation and a member of the Presbytery of the Covenant. Each of the property deeds named either the First Presbyterian Church of Paris U.S. or the corporation First Presbyterian Church U.S. of Paris, Inc., as grantee. The First Presbyterian Church U.S. of Paris, Inc. was chartered as a Texas corporation in 1966 for the purpose of holding property for the First Presbyterian Church of Paris U.S.

On February 13, 1973, in anticipation that some of its local congregations might attempt to withdraw from the PCUS, the Presbytery of the Covenant established an Administrative Commission pursuant to provisions of the Book of Church Order. The purpose of the Commission was to deal with any attempts by local congregations to withdraw from the Presbytery of the Covenant. On April 13, 1973, the Commission adopted an ecclesiastical injunction styled "A Pastoral Letter to the Ministers and Sessions of the Presbytery of the Covenant." The pastoral letter required that ninety days notice be given to the Presbytery of the Covenant by any Session prior to calling a congregational meeting for the purpose of considering a proposal to withdraw from the Presbytery of the Covenant. It also required that an additional ten days written notice be given to every communicant on the roll of any such church stating that the purpose of the meeting is "to consider and to act upon a proposal that the congregation vote to 'withdraw' from the Presbytery of the Covenant of the Presbyterian Church in the United States." Copies of the pastoral letter were sent to the First Presbyterian Church of Paris U.S. Although the pastoral letter was received by the Paris church prior to the calling of a congregational meeting for the purpose of acting on the proposal to withdraw, the required notices were not given. The creation of the Administrative Commission and the pastoral letter were reviewed at a Stated Meeting of the Presbytery of the Cove-

nant held on June 5, 1973, in Temple, Texas. The authority of the Administrative Commission and the provisions of the pastoral letter were challenged, but were expressly affirmed by the Presbytery. Thereafter, an appeal was lodged to the Synod of Red River challenging the action of the Presbytery of the Covenant. The Synod of Red River, on September 26, 1973, rendered an opinion upholding the action of the Presbytery and further affirmed the creation of and action taken by the Administrative Commission.

On June 10, 1973, oral notice was given from the pulpit of the First Presbyterian Church of Paris U.S. of a congregational meeting to be held the following Sunday, on June 17, 1973, for the purpose of considering a resolution to withdraw from PCUS. A meeting was held on that date which was attended by 101 of the 149 members on the active roll of the church. All members present voted for the withdrawal. The Presbytery of the Covenant was notified of the action of those present at the meeting. The Presbytery advised the defendants that the entire matter was being turned over to the Administrative Commission for disposition. The first action of the Administrative Commission in response to defendants' notice occurred on July 2, 1973, when the Commission considered the action taken, and after due consideration, began a process which resulted in the formal suspension and divestiture of the individuals who, on June 17, 1973, constituted the Session and Diaconate of the First Presbyterian Church of Paris U.S. In its letter of July 2, 1973, the Administrative Commission advised that the action taken to withdraw the First Presbyterian Church of Paris U.S. from the Presbyterian Church in the United States, was null and void and without any force or effect. Defendants were further requested to call a meeting of the congregation in Paris, Texas, in order to afford the Presbytery of the Covenant an opportunity to discuss the situation with interested persons, but the defendants did not do so. The Administrative Commission then, at a meeting on July 17, 1973, as-

sumed original jurisdiction over the church and suspended the Session from its function and each Ruling Elder individually from his office. The Commission then began efforts to identify the members of the congregation of the First Presbyterian Church of Paris U.S. who did not support the withdrawal and who were and wished to remain loyal to PCUS. A letter was written to all members known by the Commission, advising them that a meeting would be held on August 19, 1973, to determine which individuals wished to remain as loyal and participant Presbyterians in the Presbyterian Church in the United States. Public notice of the meeting was also published in a daily newspaper in Paris. At the meeting it was determined by the Commission that there were individuals who wished to continue as loyal communicants. It presented those individuals in attendance at the meeting a petition which, if they desired, they could sign and thereby certify their desire to continue as loyal communicants. In addition to those present at the August 19, 1973, meeting, other individuals subsequently signed the petition or similar statements. According to defendants' Exhibit 4 and the testimony of the Witness Walters, there were 149 active members of the local church when the action to withdraw was taken, and 59 on the inactive roll. Of those on the active roll, 30 signed statements of loyalty and desire to remain in the PCUS recognized church. Of those on the inactive roll, 19 signed similar statements. On September 13, 1973, the Administrative Commission officially recognized those persons who had so indicated their loyalty to the Presbyterian Church in the United States as constituting the First Presbyterian Church of Paris U.S.

During the time after June 17, 1973, defendants transferred all the real property and assets owned by the First Presbyterian Church of Paris U.S. to a corporation which they attempted to create by way of an amendment to the Charter of the First Presbyterian Church U.S. of Paris, Inc. Those who withdrew from the PCUS thereafter became affiliated with the Vanguard Presbytery of the Continuing Presbyterian Church, an organization previously identified by the Administrative Commission in its pastoral letter as being a schismatic organization.

■ There are two general types of religious bodies or organizations recognized by law. The first is that where the local congregation, by the nature of its organization, is strictly independent of any other ecclesiastical association and, so far as church government is concerned, owes no fealty or obligation to any higher authority. The second is that where the local congregation is but a subordinate member of some general church organization in which there are superior ecclesiastical tribunals with general and ultimate power of control more or less complete in some supreme judicatory over the whole membership of that general organization. *Watson v. Jones*, 80 U.S. 679, 20 L.Ed. 666. The first type has come to be known as a congregational church, while the second is generally called a connectional or hierarchical church. See Annot., 52 A.L. R.3rd 324 (1973). It is undisputed and has been uniformly recognized by the decisions that PCUS is of the second type, and is connectional or hierarchical, at least as to ecclesiastical matters and church government. Annot., 52 A.L.R.3rd 417 (1973).

■ The civil courts are limited in their power to resolve church related disputes. The First Amendment to the United States Constitution prohibits their exercising any jurisdiction over purely ecclesiastical matters. *Watson v. Jones*, supra. Civil courts do have power to resolve disputes relating to church property, but their role in resolving such disputes is severely circumscribed by the Constitution. Their function in such cases is restricted to an adjudication of property rights by the application of neutral principles of law, developed for use in all property disputes, which can be applied without "establishing" churches to which property is awarded. *Presbyterian Church v. Blue Hull Church*, 393 U.S. 440, 89 S.Ct. 601, 21 L.Ed.2d 658. And when a connectional or hierarchical organization is involved, the decisions of the

highest church judicatory to which the question has been taken, as to questions of church discipline or government, are, so far as they are relevant, final and binding upon the civil courts. *Watson v. Jones*, supra; *Brown v. Clark*, 102 Tex. 323, 116 S.W. 360 (1909); *Lowe v. First Presbyterian Church of Forest Park*, 56 Ill.2d 404, 308 N.E.2d 801 (1974); *St John's Presbytery v. Central Presbyterian Church*, Fla.1958, 102 So.2d 714; *Turbeville v. Morris*, 203 S.C. 287, 26 S.E.2d 821 (1943). The civil courts can grant relief from such decisions only if, by the narrowest kind of review, they are found to have resulted from fraud, collusion or arbitrariness. *Gonzalez v. Roman Catholic Archbishop*, 280 U.S. 1, 50 S.Ct. 5, 74 L.Ed. 131; *Presbyterian Church v. Blue Hull Church*, supra.

When a division occurs in a local church affiliated with a hierarchical religious body, and a dispute arises between rival groups as to the ownership or control of the local church property, the fundamental question as to which faction is entitled to the property is answered by determining which of the factions is the representative and successor to the church as it existed prior to the division, and that is determined by which of the two factions adheres to or is sanctioned by the appropriate governing body of the organization. It is a simple question of identity. *Norton v. Green*, 304 S.W.2d 420 (Tex.Civ.App. Waco 1957, writ ref'd n.r.e.); *Bramlett v. Young*, 229 S.C. 519, 93 S.Ct.2d 873 (1956); *St. John's Presbytery v. Central Presbyterian Church*, supra; *Adickes v. Adkins*, 264 S.C. 394, 215 S.E.2d 442 (1975). In making such a determination, the civil court exercises no role in determining ecclesiastical questions. It merely settles a dispute as to identity, which in turn necessarily settles a dispute involving property rights. In doing so, the court applies neutral principles of law as required by *Presbyterian Church v. Blue Hull Church*, supra; *Adickes v. Adkins*, supra; *Bramlett v. Young*, supra.

Prior to June 17, 1973, the First Presbyterian Church of Paris U.S. and all its members were loyal to and part of the organization of PCUS. Their affiliation and membership implied consent to the PCUS form of government, and their conduct acknowledged its supremacy. *Watson v. Jones*, supra; *Norton v. Green*, supra; *Lowe v. First Prebyterian Church of Forest Park*, supra; *Presbytery of Everglades v. Morgan*, Fla.App.1961, 125 So.2d 762. There is no question that the members who became dissatisfied with the actions of PCUS could withdraw their membership from the First Presbyterian Church of Paris U.S. and thus their affiliation with PCUS. But by their unilateral action they could not dissolve the local church which was an integral part of PCUS. *Browning v. Burton*, 273 S.W.2d 131 (Tex.Civ.App. Austin 1954, writ ref'd n.r.e.); *Bramlett v. Young*, supra; see also *Cumberland Presbyterian Church v. North Red Bank Cumberland Presbyterian Church*, 58 Tenn.App. 424, 430 S.W.2d 879 (1968). The PCUS Constitution expressly vests in the presbytery the power to dissolve a local church. If, then, the local church was not dissolved, it still existed after June 17, 1973, and it became the prerogative of the governing judicatories of PCUS to determine if the withdrawing faction or those on the church roll who remained faithful to PCUS and who wished to remain members of it constituted the lawful congregation of the First Presbyterian Church of Paris U.S. That question has been considered and finally ruled upon by those authorities. Those persons constituting the loyal faction have submitted themselves to the judicatories of PCUS and have been recognized by such as the duly existing local congregation. They therefore have the identity to make of them the First Presbyterian Church of Paris U.S., and they are entitled to possession and control of the property conveyed to that church. *Norton v. Green*, supra; *Bramlett v. Young*, supra.

Defendants place great emphasis upon their claim that the vote to withdraw from PCUS was unanimous. The vote was unanimous as to those in attendance at the meeting, but it was not unanimous as to those on the active membership roll of the church. But unanimous or not, the mem-

bers of a church organization which is hierarchical as to church government cannot dissolve a local church in contravention of the governing rules or edicts of the mother church, and then re-establish themselves as an independent church or one associated with a schismatic group and take the church property with them. *Cumberland Presbyterian Church v. North Red Bank Cumberland Presbyterian Church*, supra; *St John's Presbytery v. Central Presbyterian Church*, supra; *Fairmount Presbyterian Church v. Presbytery of Holston*, 531 S.W.2d 301 (Tenn.App.1975). Even if the action of withdrawal had amounted to a dissolution of the local church, the PCUS Constitution provides that upon such a dissolution the church property shall be transferred to the appropriate presbytery.

We do not regard either the defendants' contention that PCUS is congregational as to property or the jury finding of estoppel to be dispositive of this controversy. The assertion that PCUS is congregational as to property, even if true, would not benefit the defendants. By "congregational as to property" it is meant that the *local church* owns its property and is free to dispose of it as it wishes. But we are at once met with the fact that the loyal faction, not the defendants, constitute the local church. The property was conveyed to the First Presbyterian Church of Paris U.S., or to the corporation holding title in trust for it, and the PCUS judicatories have recognized the loyal faction as that church. The right of *that church* to control its own property is not in dispute here. For the same reasons the jury findings concerning representations and reliance thereon do not benefit the defendants. According to the undisputed evidence and the wording of the estoppel issues themselves, the statements or policy pronouncements alleged to have constituted representations were made prior to the withdrawal vote and were made to "the First Presbyterian Church of Paris U.S." to the effect "that *it* owned its property and could make such disposition thereof as it desired." Thus, even if they constituted representations and were true, they benefit the First Presbyterian Church of

Paris U.S. That church existed prior to the schism; it still exists, and is composed of those members who remained loyal to PCUS and who have been recognized by the governing judicatories as the local church. As said in *Adickes v. Adkins*, supra:

"The property belonged to the First Presbyterian Church of Rock Hill before the members joined the church, and it belongs to the same after they have withdrawn. They simply are not now a part of that church."

See also *Brown v. Clark*, supra. Neither could the jury finding on the question of the church's right to withdraw from PCUS without the consent of the Presbytery of the Covenant authorize a judgment for defendants. Such a question is one of church government, and it has been determined adversely to defendants by the appropriate church tribunals. To allow the jury or court to inquire into the correctness of that adjudication and overturn it would constitute an impermissible intrusion upon the power of a religious organization "to decide for themselves, free from state interference, matters of church government . . ." *Kedroff v. St. Nicholas Cathedral*, 344 U.S. 94, 73 S.Ct. 143, 97 L.Ed. 120.

It follows that plaintiffs were entitled to judgment non obstante veredicto. The judgment is therefore reversed and declaratory judgment is here rendered as prayed for by plaintiffs in their petition. All other relief sought by defendants or plaintiffs is denied.