BYRON W. YORK *et al.*, Plaintiffs-Appellees, v. THE FIRST PRESBYTERIAN CHURCH OF ANNA *et al.*, Defendants-Appellants.

Fifth District   No. 5—83—0716

Opinion filed November 9, 1984.—Rehearing denied December 12, 1984.

R. Corydon Finch, of Anna, for appellants.

John M. Ferguson, of Belleville, for appellees.

JUSTICE KARNS delivered the opinion of the court:

This appeal concerns a dispute between a small local church corporation, the First Presbyterian Church of Anna, and its predecessor, the First United Presbyterian Church of Anna (Anna Church), and its denominational organization, the United Presbyterian Church in the United States of America (UPCUSA). Anna Church appealed from an order of the circuit court of Union County granting injunctive and declaratory relief in favor of UPCUSA and its governing bodies. The central controversy involves the ownership and control of the property of Anna Church.

Defendant-appellant Anna Church was formerly a member of UPCUSA, an unincorporated religious association of Presbyterian churches, having a hierarchical structure of church government. UPCUSA's constitution provides that the local church is governed by a judicatory known as the Session, comprised of members of the local church, having immediate authority to direct and manage the affairs

of the local church. The actions of the Session are, in many instances, subject to review and control by higher UPCUSA judicatories, called, in ascending order, the Presbytery, the Synod, and the General Assembly. UPCUSA's form of government is outlined in that part of the church constitution called the Book of Order, which delineates the duties, obligations, and authority of each judicatory.

In July 1980, UPCUSA's General Assembly presented Overture A, which consisted of a proposed amendment to UPCUSA's constitution in order to create an express trust, to the benefit of the denominational church organization, of all property held by the local churches and the judicatories of UPCUSA. Although a similar proposal failed in 1929, Overture A was approved and the amendment was added in May 1981. On October 27, 1980, Anna Church held a meeting of its members, called for the purpose of amending its articles of incorporation. By a vote of 98-28, the congregation amended the articles with certain provisions which in essence amounted to an absolute withdrawal from UPCUSA. Immediately afterwards, the defendants organized the Anna Presbyterian Foundation. By a margin of 100 to 15, the members voted to convey the real property of the local church to this entity, and the transfer was effected by warranty deed on October 28, 1980. Although the reasons for these actions were never fully clarified, the record indicates that substantial concern existed in the local congregation over the ramifications of the proposed Overture A.

On November 13, 1980, at its stated meeting, plaintiff-appellee Presbytery appointed an administrative commission to investigate the actions of Anna Church. The investigation primarily consisted of a meeting attended by the commission and several members of the Anna Church's former Session. On the Commission's finding of disunity and "utter disregard" by the Session of UPCUSA's Book of Order, Presbytery appointed a second commission (plaintiff Anna Administrative Commission II) to replace the Anna Church Session, which was formally removed by the same order of Presbytery on November 20, 1980. Both the removal and the appointment were authorized by UPCUSA's constitutional directives, although Anna Church argued at trial and asserts on appeal that Presbytery's order was somehow effected without procedural due process.

When Anna Church continued to exercise control over the local church property, UPCUSA, Presbytery, and Anna Administrative Commission II sought a declaratory judgment. After a nonjury trial, the court ordered the defendants to convey all the church property to the Administrative Commission, and enjoined the defendants from in-

terfering with the Commission's authority and control. The court declared that Anna Church remained a constituent member of the denomination, subject to its orders and decisions, that the local church's withdrawal was invalid, and that UPCUSA's General Assembly had determined that all church property was held in trust for UPCUSA. Based on judicial deference to the General Assembly's determination, the trial court declared that defendants were no longer entitled to the use of any church property.

Constitutional restraints upon the adjudication of church controversies have not eliminated the recurrence of bitter property disputes such as the one brought in this appeal. (Note, *Judicial Intervention in Disputes Over the Use of Church Property*, 75 Harv. L. Rev. 1142 (1962); Annot., 52 A.L.R.3d 324 (1973).) Unfortunately, the authoritative case law offers no specific mandate for deciding the issues presented. Rather, the approaches sanctioned by the Supreme Court of the United States are advanced by the parties as contrasting principles for our analysis. A review of the constitutionally acceptable methods is therefore helpful to our disposition of the case at bar.

Traditionally, church litigation involving the application of ecclesiastical decisions have been decided in accordance with the principles articulated in *Watson v. Jones* (1872), 80 U.S. (13 Wall.) 679, 20 L. Ed. 666. In *Watson*, two rival factions of a local Presbyterian church became involved in litigation over control of the church premises. The General Assembly of the larger denominational church decided in favor of the majority faction, but the minority group took control of the property. Both the deed and the charter provided that the property and the trustees of the local church were subject to the fundamental laws of the general church. In *Watson*, the court held for the majority under an absolute principle of judicial deference to internal ecclesiastical decisions. The deference rule was to be applied in those cases where the religious entity holding the property is a subordinate member of a general church organization having a hierarchical structure. Specifically enunciated, compulsory deference was mandated "whenever the questions of discipline, or faith, or ecclesiastical rule, custom, or law have been decided by the highest of these church judicatories to which the matter has been carried ***." 80 U.S. 679, 727, 20 L. Ed. 666, 676.

The language used by the high court in *Watson* has been quoted for decades in cases involving church disputes. Although a controversy within an hierarchical system of church government can be identified by the *Watson* definitional formula and therefore presented as a case requiring compulsory deference, the rule itself is not so pre-

cisely applied. The *Watson* language omits reference to decisions rendered by an internal church judicatory concerning matters entirely civil in nature. Thus, where the litigation involves only the issue of property control, the *Watson* standard fails as a constitutional imperative.

An alternative to the strict deference of *Watson* was identified in *Presbyterian Church v. Mary Elizabeth Blue Hull Memorial Presbyterian Church* (1969), 393 U.S. 440, 21 L. Ed. 2d 658, 89 S. Ct. 601. The *Hull* case involved the withdrawal of two local churches from the general hierarchical organization, and subsequent discord over the control of the church property. The court stated that civil courts are proper fora for settling religious property disputes, and rejected any application of *Watson* which would preempt civil review of church decisions affecting property rights. The *Hull* principle left civil courts free to adjudicate property disputes if the decisional process averted underlying doctrinal conflicts. As the *Hull* case recognized the efficacy of a "neutral principles of law" analysis, this method was unequivocally endorsed in *Jones v. Wolf* (1979), 443 U.S. 595, 61 L. Ed. 2d 775, 99 S. Ct. 3020, allowing State courts to adopt a "neutral principles of law" analysis in resolving property disputes if they chose to do so, rather than apply the principle of judicial deference heretofore thought to be required by *Watson.*

Despite appellants' contrary assertion, UPCUSA maintains a hierarchical structure of government and, at least until the events of October 1980, the Anna Church's subordinate posture in the general church organization left it subject to the decisions of the controlling judicatories. This circumstance does not, however, preclude a civil court decision respecting the Anna Church property, even under a *Watson* stricture, provided that the decision is reached without intrusion into UPCUSA's ecclesiastical domain. In our view the threshold question for our consideration is whether we are constrained under our State decisional law. Appellee maintains that we are committed to compulsory deference and, in support of this contention, cites *Lowe v. First Presbyterian Church* (1974), 56 Ill. 2d 404, 308 N.E.2d 801.

In *Lowe,* the Presbytery of the general church formally dissolved the local church in accordance with its church constitutional authority, and ordered the local church to convey its property to the Church Extension Board of the Presbytery. The local congregation refused, claiming that the board had previously quitclaimed the property to the local church and that Presbytery lacked authority to dissolve their local church or to order the reconveyance. The court held that a simple examination of the deed to the property was not sufficient to resolve

the controversy and stated that a detailed inquiry into the polity of the general church was necessitated by the issues presented. Finding that the denominational church was hierarchical in form, and that the local church was its subordinate member, the court deferred to the internal church decision because "[i]n these circumstances, the civil courts cannot, in the process of resolving property disputes between the local and the general church, independently determine questions properly within the sphere of ecclesiastical bodies." *Lowe v. First Presbyterian Church* (1974), 56 Ill. 2d 404, 415, 308 N.E.2d 801, 807.

We find that the *Lowe* decision does not prevent our disposition of this appeal by a neutral principles analysis. We note preliminarily that the significant *Jones* case was decided several years after *Lowe*. The unambiguous approval in *Jones* of a neutralized analysis of church property disputes, together with the high court's thoughtful articulation of the advantages and necessary cautions which inhere in the neutral principles method, support our belief that our own supreme court may be inclined to endorse the adoption of the neutral approach in reviewing property disputes such as the present one.

The factual disparity between *Lowe* and the instant case serves as an additional basis for our rejection of *Lowe* as dispositive of the issues presented here. In *Lowe,* the authority of the parent church to dissolve the subordinate congregation and to direct a conveyance of its assets was explicitly authorized in the church constitution and implemented accordingly. In contrast, no dissolution of the Anna Church was attempted, for reasons unapparent in the record, although the identical constitutional option existed. Unlike *Lowe,* the internal decision to which the trial court yielded in the instant case is not supported by demonstrable concepts of ecclesiastical law which grant a clear right to denominational appropriation of local church assets. Therefore, even if the removal of the Anna Church Session is judicially endorsed, the property issue is left unresolved.

Moreover, we do not read *Lowe* as a blanket adoption of the compulsory deference rule, foreclosing review by neutral principles in all cases presenting internal religious controversies. The thrust of appellees' arguments appears to be an assertion that the mere categorization of the local-general church relationship as hierarchical is determinative of the question of property control. To extract such a meaning from *Lowe* and other pre-*Jones* cases is to discount the judicial role in resolution of civil property rights which has been emphatically recognized and painstakingly qualified in the principles which have evolved since *Watson* and which have culminated in the *Jones* endorsement of a neutral approach.

Our careful examination of *Lowe* produces a belief in its conformance to both the deference of *Watson* and the neutrality of *Jones*. Where appropriate, a church decision requires judicial acquiescence. But when the property question is distinguishable from church doctrine, the issue can, and must, be decided without impermissible intrusion into ecclesiastical jurisdiction.

In the instant case, no question of religious doctrine or practice was ever addressed or decided by the Presbytery. The only matter considered and ruled upon by the higher judicatory was the removal and replacement of the Anna Church Session, an entity which had arguably ceased to exist. Presbytery's decision included no mention of severance by the former Session or of legal ownership of the church property. Endorsement of the removal action is mandated by first amendment considerations, but it fails to resolve the real issue presented in this appeal. We believe that the neutral principles approach is the appropriate method for determining the central question of property control.

Our preference for a neutralized analysis is not limited to our belief in its adaptability to the facts presented in the case at bar. We are additionally persuaded by the more widespread benefits of its utilization. In *First Presbyterian Church v. United Presbyterian Church* (1984), 62 N.Y.2d 110, 464 N.E.2d 454, the court of appeals of New York adopted a neutral principles approach on facts virtually identical to those presented for our review, and remarked on the method's advantages:

> "It is completely secular in operation, it is flexible enough to accommodate all forms of religious organizations and it relies upon well-established principles of law familiar to Judges and lawyers. It also provides predictability so that religious organizations may order their affairs to account for its application. Moreover, we agree with those who have observed that the doctrine is preferable to deference because it does not prefer one group of disputants to another. The deference approach assumes that the local church has relinquished control to the hierarchical body in all cases, thereby frustrating the actual intent of the local church in some cases. Such a practice, it is said, discourages local churches from associating with a hierarchical church for purposes of religious worship out of fear of losing their property and the indirect result of discouraging such an association may constitute a violation of the free exercise clause." (62 N.Y.2d 110, 121, 464 N.E.2d 454, 460.)

The policies advanced by the New York court apply especially to the

instant facts. UPCUSA's Overture A was concededly proposed to conform to the *Jones* ruling, and Anna Church's reaction to the proposal leaves no doubt that the relationship between the parties lacked an explicit mutual understanding of property rights within the religious structure or otherwise. The judicial task, then, is to settle the property rights most carefully, avoiding invasion into the ecclesiastical purview.

■ In applying neutral principles, courts will generally examine the language of the deeds, the terms of the local corporate charter, the State statutes applicable to church property, and the relevant provisions of the church constitution and laws. (*Jones v. Wolf* (1979), 443 U.S. 595, 603, 61 L. Ed. 2d 775, 784-85, 99 S. Ct. 3020, 3025, citing *Maryland and Virginia Elderships v. Church of God* (1970), 396 U.S. 367, 368, 24 L. Ed. 2d 582, 584, 90 S. Ct. 494, 500.) An examination of the evidence as to the first three items for consideration yields nothing that creates an express or implied trust or other interest vested in the general church. It is clear from the record that title to the local church property was conveyed to the Anna Presbyterian Foundation, an Illinois not-for-profit corporation, on October 28, 1980, prior to the removal decision and long before the adoption of Overture A in May 1981. This analysis is referred to as the "formal title" doctrine and was the method employed by the Georgia Supreme Court in ruling in favor of the local church upon remandment of *Hull*. (On remand *sub nom. Presbyterian Church in United States v. Eastern Heights Presbyterian Church* (1969), 225 Ga. 259, 167 S.E.2d 658, *cert. denied* (1970), 396 U.S. 1041, 24 L. Ed. 2d 685, 90 S. Ct. 680.) The last item of analysis requires cautious inquiry. The provisions in chapter XI of part II of UPCUSA's constitution, utilized by the UPCUSA Presbytery to remove the Anna Church Session, is not helpful to appellees' cause because the provisions do not confer title or right of control to the local property, nor can a purely secular interpretation support any contention that those provisions operate to create some type of property interest in the general church. The constitutional provisions which directly relate to the issue of property are found in chapter XXXIII of the Book of Order, which authorizes a take-over of local church property upon dissolution or extinction, neither of which occurred in the Anna Church. Because nothing which can be legitimized by neutral legal principles is discoverable from the record to support appellees' right to the local church property, we reverse those portions of the trial court's order which affect the property interest of Anna Church.

■ We also reverse the trial court's declaration of the nullity of

Anna Church's actions of withdrawal and severance, holding that to make such a ruling impermissibly intrudes into church polity. Despite appellees' concession that the local church had the right to withdraw from the denomination, the trial court nullified the withdrawal, apparently accepting the general church's assertion that the local congregation could not maintain control over church property upon severance from UPCUSA. Also reflected in the judgment is the trial court's acquiescence in the General Assembly's interpretation of UPCUSA's constitution, which established a superior interest in the local church property for the benefit of the denomination. These contentions by appellees amounted to self-serving arguments rather than supportable allegations of fact and should not have been included in the trial court's judgment. The constitutional restraints which control religious property disputes, whether applied through *Watson* deference or a neutral analysis, require that the only action of the trial court which can be affirmed is the judicial conformance to Presbytery's decision of removal and replacement of the Anna Church Session. On the other hand, because "the State has a legitimate interest in resolving property disputes" (*Presbyterian Church v. Mary Elizabeth Blue Hull Memorial Presbyterian Church* (1969), 393 U.S. 440, 445, 21 L. Ed. 2d 658, 663, 89 S. Ct. 601, 604), our neutral disposition of the property question is not only an appropriate resolution but a judicial obligation. Our task has been made easier by the limited scope of the decision of the church judicatory, confining the ultimate result of the instant litigation to a judicial acknowledgement of the removal and replacement of the Anna Church Session. We affirm that aspect of the judgment order and reverse those portions which purport to do anything more.

Affirmed in part; reversed in part.

WELCH, P.J., and HARRISON, J., concur.