GARNETT CLAY *et al.*, Plaintiffs-Appellants, v. ILLINOIS DISTRICT COUNCIL OF THE ASSEMBLIES OF GOD CHURCH *et al.*, Defendants-Appellees.

Fourth District    No. 4—95—0149

Opinion filed October 31, 1995.

George P. Wittman, of Law Office of George P. Wittman, and Eric S. Pistorius, both of Jerseyville, for appellants.

Nancy L. Ruyle, of Law Office of Phelps, Kasten, Ruyle & Burns, of Carlinville, for appellees.

PRESIDING JUSTICE KNECHT delivered the opinion of the court:

Plaintiffs Garnett Clay, Donald Clay, Florence Klein, Nadine Klunk, Charles Manley, Shirley Kirby, and Grace Manley appeal the trial court's grant of summary judgment for defendants Illinois District Council of the Assemblies of God Church (Illinois District Council), Ernest Moen and C. Dale Edwards, trustees, and Jeffrey Senger, William Senger, and Marsha Senger. We affirm.

In March 1955, the trustees of the Grafton Assembly of God Church (Grafton Assembly) received a deed to certain real estate in

Grafton, Illinois. Title to the real estate was in the names of the trustees and their successors in office. In March 1963, the Grafton Assembly became affiliated with the Illinois District Council with headquarters in Springfield, Illinois, and the General Council of the Assemblies of God Church (General Council) with headquarters in Springfield, Missouri. In becoming affiliated with these organizations, the Grafton Assembly adopted a constitution and bylaws. The constitution declares:

"Article II. RIGHTS

Section 1. This assembly shall have the right to govern itself according to the standards of the New Testament Scriptures[.] ***

Section 2. In connection therewith it shall have the right to purchase or acquire by gift, bequest or otherwise, either directly or as trustee, and to own, hold in trust, use, sell, convey, mortgage, lease or otherwise dispose of any real estate or chattels as may be necessary for the furtherance of its purposes; all in accordance with its constitution and bylaws or as the same may be hereafter modified or amended.

Article III. AFFILIATION

While maintaining its inherent rights to sovereignty in the conduct of its own affairs, this assembly shall voluntarily enter into full cooperative fellowship with assemblies of like precious faith associated in the Illinois District Council, and the [General Council], with headquarters in Springfield, Illinois[,] and Springfield, Missouri[,] respectively[,] and shall share in the privileges and assume the responsibilities enjoined by that affiliation.

* * *

Article XI. PROPERTY

All property of the assembly shall be deeded to the assembly and held by the Official Board and their successors in office. No property of the assembly shall be sold, leased, or mortgaged or otherwise disposed of without the same shall have first recommended by a vote of at least two-thirds of the voting membership who are in attendance at a regular meeting or a special meeting of the assembly which has been called for the consideration of the proposal. The Pastor and Secretary of the assembly shall certify in such conveyance, lease or mortgage, that the same has been duly authorized and recommended by a vote of the assembly. Such certificate shall be held to be conclussive [sic] evidence thereof."

The bylaws of the Grafton Assembly declare:

"Article VI. PROPERTY RIGHTS

Section 1. In the event that the assembly herein mentioned

ceases to function as an Assemblies of God Church, then the said property, real or chattel, shall revert to the Illinois District Council of the Assemblies of God, Inc., whose headquarters are located at Springfield, Illinois. The Illinois District Council of the Assemblies of God shall forthwith have full authority to use or dispose of the property at their discretion. In the event of the sale of the property by the Illinois District Council of the Assemblies of God, Inc., the proceeds derived therefrom shall be used by the said District Council in furtherance of the gospel of Christ."

The constitution of the Illinois District Council states:

## "ARTICLE VII. RELATIONSHIPS

* * *

3. To Local Assemblies

The local churches of the District, which are in full fellowship with the District, shall recognize and be subject to the District Council as set forth in Article XI.

* * *

## ARTICLE XI. LOCAL ASSEMBLIES

Section 1. Affiliated Assemblies

***

b. We recognize that each affiliated assembly has the right to self-government[.] *** It shall have the right to acquire, hold, and dispose of its property in its own right in its corporate name as a self-governing unit.

***

d. If for any reason the membership of the sovereign assembly shall decrease to the point where the active membership roll is less than twelve members, it shall be advised that they surrender their authority as a sovereign assembly, and shall be classified as a dependent assembly, under District Supervision."

The bylaws of the Illinois District Council declare:

## "ARTICLE VIII. WORLDS MISSIONS

* * *

Section 3. Administration and Policy

* * *

f. Official Board and Advisory Committees

(1) In Home Missions or district supervised churches, an Advisory Committee may be appointed by the pastor and ratified by the official board. The sectional executive committee and the district executive officers shall serve as the official board of all district[-]supervised churches."

In 1979, membership in the Grafton Assembly fell to eight. As a

result, the Grafton Assembly became a "district[-] supervised church" in 1980. Because the Grafton Assembly was now a district-supervised church, the official board of the Grafton Assembly became the sectional executive committee (Presbytery Board) and the president and secretary of the Illinois District Council, pursuant to the bylaws of the Illinois District Council. In September 1989, at a regular meeting of the Presbytery Board, it voted to close the Grafton Assembly and sell its personal and real property. The church building was closed in the summer of 1991, and in October 1991, the Illinois District Council conveyed the real estate to Jeffrey Senger, William Senger, and Marsha Senger as tenants in common.

In January 1992, plaintiffs, apparently the remaining members of the Grafton Assembly, brought suit against defendants asking the trial court to void the transfer of the real estate. Plaintiffs alleged they were the true successors in office to the original title holders, and so the Illinois District Council was without authority to convey the real estate. Defendants filed a motion for summary judgment. Plaintiffs argued summary judgment was inappropriate because there remained a genuine issue of material fact: the interpretation of the constitutions and bylaws of both the Grafton Assembly and the Illinois District Council. In January 1995, the trial court granted defendants' motion, finding the plain language of these documents granted the Illinois District Council authority to convey the real estate. Plaintiffs now appeal.

Before we discuss the merits of plaintiffs' arguments, we must first address an argument raised by defendants. Defendants cite, and extensively discuss, *Lowe v. First Presbyterian Church* (1974), 56 Ill. 2d 404, 308 N.E.2d 801, as support for their position. It appears they are impliedly arguing the trial court, being a civil court, was required to defer to the ecclesiastical decision of the Illinois District Council regarding ownership of the real estate at issue, and thus the trial court's decision can be affirmed on this ground. Plaintiffs, in their reply brief, also interpret defendants to be arguing this position. To decide this question, we must examine when a civil court may resolve a property dispute between affiliated religious entities.

■ Traditionally, church litigation involving the application of ecclesiastical decisions has been decided in accordance with the principles articulated in *Watson v. Jones* (1871), 80 U.S. (13 Wall.) 679, 20 L. Ed. 666. In *Watson,* the Court held absolute deference to internal ecclesiastical decisions was to be applied where the religious entity holding the property is a subordinate member of a general church organization having a hierarchical structure. This avoided conflict with the religion clauses of the first amendment to the United

States Constitution. (U.S. Const., amend. I.) Compulsory deference was mandated "whenever the questions of discipline, or of faith, or ecclesiastical rule, custom, or law have been decided by the highest of these church judicatories to which the matter has been carried." *Watson*, 80 U.S. (13 Wall.) at 727, 20 L. Ed. at 676.

The Supreme Court of Illinois adopted and applied this standard to church property disputes in *Lowe*. There, the Presbytery of Chicago of the United Presbyterian Church in the United States of America dissolved a local congregation. The local congregation refused to convey its real and personal property to the Presbytery of Chicago even though required to do so by the rules of the United Presbyterian Church pertaining to the dissolution of a local congregation. The Presbytery of Chicago filed suit, seeking to compel the local congregation to convey the property to it. The trial court awarded judgment for the Presbytery of Chicago. The appellate court reversed, but the Supreme Court of Illinois reversed the appellate court and affirmed the trial court's ruling. The supreme court declared:

> "[W]here a local church is but a subordinate member of a superior general church organization, and has directly or impliedly consented to its form of government, that church is ordinarily bound by the decisions of the ecclesiastical judicatories. In these circumstances, the civil courts cannot, in the process of resolving property disputes between the local and the general church, independently determine questions properly within the sphere of ecclesiastical bodies." (*Lowe*, 56 Ill. 2d at 415, 308 N.E.2d at 807.)

Thus, the civil courts could not relitigate the ownership of the local congregation's property, and so the trial court was required to enforce the decision of the Presbytery of Chicago.

*Lowe* is directly on point. The Grafton Assembly, the local church, is disputing the ownership of real estate with the Illinois District Council, the regional church organization. The Assembly of God denomination is a hierarchical church organization. The Illinois District Council has already decided the true ownership of the property at issue, and so according to *Lowe*, the civil courts of Illinois may not relitigate ownership. We could follow *Lowe* and affirm the trial court's summary judgment for defendants on this basis. Plaintiffs, however, cite precedents since *Lowe* which have carved an exception to the rule. We need not decide the extent to which *Lowe* is still good law, because we can affirm even under plaintiffs' theory.

■ Plaintiffs note after *Lowe* was decided, the United States Supreme Court, in *Jones v. Wolf* (1979), 443 U.S. 595, 603, 61 L. Ed. 2d 775, 784, 99 S. Ct. 3020, 3025, declared State courts may apply "neutral principles of law" in resolving religiously related property

disputes, even among a hierarchical church organization, so long as the court need not decide a *religious* matter involving church "doctrine, polity, and practice." "The method relies exclusively on objective, well-established concepts of trust and property law familiar to lawyers and judges." (*Jones,* 443 U.S. at 603, 61 L. Ed. 2d at 785, 99 S. Ct. at 3025.) Under this approach, the court objectively examines pertinent church charters, constitutions and bylaws, deed, State statutes, and other evidence and resolves the matter the same as it would a secular dispute. *St. Mark Coptic Orthodox Church v. Tanios* (1991), 213 Ill. App. 3d 700, 714, 572 N.E.2d 283, 291.

After *Jones,* the Fifth District Appellate Court, in *York v. First Presbyterian Church* (1984), 130 Ill. App. 3d 611, 617, 474 N.E.2d 716, 721, declined to follow *Lowe* in resolving a property dispute between a local and regional organization of the United Presbyterian Church of the United States in America. The appellate court declared:

> "We note preliminarily that the significant *Jones* case was decided several years after *Lowe.* The unambiguous approval in *Jones* of a neutralized analysis of church property disputes, together with the high court's thoughtful articulation of the advantages and necessary cautions which inhere in the neutral principles method, support our belief that our own supreme court may be inclined to endorse the adoption of the neutral approach in reviewing property disputes such as the present one." (*York,* 130 Ill. App. 3d at 616, 474 N.E.2d at 720.)

In addition to *York,* other Illinois appellate courts considering the issue have uniformly adopted the "neutral principles of law" approach. (See, *e.g., Tanios,* 213 Ill. App. 3d 700, 572 N.E.2d 283; *Aglikin v. Kovacheff* (1987), 163 Ill. App. 3d 426, 516 N.E.2d 704.) Further, unlike *York,* these and other cases since *Jones* have not even cited *Lowe,* but have instead cited *Jones,* other United States Supreme Court cases, cases in other jurisdictions, and scholarly works in support of applying the "neutral principles of law" approach. Plaintiffs assert we should apply the "neutral principles of law" approach to the case at hand. Plaintiffs then argue if this principle is applied, the constitutions and bylaws relevant here create an ambiguity that must be resolved by the trial court as a matter of fact, and therefore summary judgment for defendants was improper.

■ In construing a contract, a court must give effect to the intent of the parties to the contract. (*In re Doyle* (1991), 144 Ill. 2d 451, 468, 581 N.E.2d 669, 676.) A construing court must first determine, as a question of law, whether the language of the contract is ambiguous as to the parties' intent. (*Quake Construction, Inc. v. American Airlines, Inc.* (1990), 141 Ill. 2d 281, 288, 565 N.E.2d 990, 994.)

Whether a contract is ambiguous is a question of law for the court to decide. If the agreement is not ambiguous, the parties' intent must be derived, as a matter of law, solely from the writing itself, giving the words used their common and generally accepted meaning. (*Monroe Dearborn Limited Partnership v. Board of Education* (1995), 271 Ill. App. 3d 457, 462, 648 N.E.2d 1055, 1058.) If the terms of an alleged contract are ambiguous or capable of more than one interpretation, however, parol evidence is admissible to ascertain the parties' intent. The interpretation of an ambiguous contract is a question of fact. *Quake Construction*, 141 Ill. 2d at 288-89, 565 N.E.2d at 994.

■ Applying these neutral principles, plaintiffs correctly note under the constitution of the Grafton Assembly, the official board of the church may not convey church property without a two-thirds vote of the local assembly. In addition, contrary to defendant's contention, no exception to this rule is listed in the Grafton Assembly's constitution. Thus, this rule would appear to apply regardless whether the church had elected its own official board, or whether the Illinois District Council had appointed the official board because the church had become a "dependent assembly" under district supervision and oversight. Two-thirds of the Grafton Assembly did not approve the conveyance of its property here, so this language in the Grafton Assembly's constitution cannot be a proper basis for the trial court's grant of summary judgment for defendant.

Plaintiffs next assert, also correctly, the only other possible basis for the trial court's ruling was the Grafton Assembly's bylaws, in which it is declared the assembly's property shall revert to the Illinois District Council if the Grafton Assembly "ceases to function as an Assemblies of God Church." Plaintiffs assert this phrase is ambiguous, and therefore a question of fact remained for the trial court to determine: whether the Grafton Assembly had ceased to "function as an Assemblies of God Church." The parties differ in their interpretation of this phrase. Defendants note the Illinois District Council had withdrawn the Grafton Assembly's certification of membership in the Illinois District Council and the General Council at the time the Illinois District Council conveyed the Grafton Assembly's property to the third parties. Defendants essentially assert this was sufficient for the trial court to find, as a matter of law, plaintiffs were no longer functioning as an Assemblies of God Church. Plaintiffs, on the other hand, argue although they are no longer affiliated with the Illinois District Council or the General Council, they still consider themselves to be "functioning" as a church, and they continue to call themselves the "Grafton Assembly of God Church." They contend this ambiguity in the Grafton Assembly's constitution, which has resulted in differ-

ing interpretations by them and defendants, requires the trial court to interpret the contract, and so summary judgment was inappropriate.

Plaintiffs are correct the Grafton Assembly's bylaws are ambiguous in this regard. However, a civil court cannot resolve this ambiguity by applying "neutral principles" of contract or property law. Even the "neutral principles of law" approach is *not* to be applied when a civil court would need to decide an *ecclesiastical* issue. As the United States Supreme Court stated in *Jones*, even though the "neutral principles of law" approach might be applicable generally to property disputes within a church organization:

> "there may be cases where the deed, the corporate charter, or the constitution of the general church incorporates religious concepts in the provisions relating to the ownership of property. If in such a case the interpretation of the instruments of ownership would require the civil court to resolve a religious controversy, then the court must defer to the resolution of the doctrinal issue by the authoritative ecclesiastical body." *Jones*, 443 U.S. at 604, 61 L. Ed. 2d at 785, 99 S. Ct. at 3026.

Here, the reversion clause in the Grafton Assembly's bylaws did not condition reversion of its property to the Illinois District Council on some objectively ascertainable fact, such as whether the Illinois District Council had decertified the Grafton Assembly for affiliation with the Illinois District Council. Instead, the reversion of the Grafton Assembly's property was conditioned on the fact the Grafton Assembly had "cease[d] to function as an Assemblies of God Church." It is not the province of a civil court to decide whether plaintiffs are still functioning as a church, or whether they are still functioning as an Assemblies of God Church. That is an ecclesiastical matter involving church doctrine, polity, and practice. Civil courts must abstain from resolving such a religious controversy and must instead defer to the decision of the highest church body to decide the issue. The Illinois District Council concluded the Grafton Assembly had ceased to function as an Assemblies of God Church. The civil courts will recognize that decision and abstain from relitigating the issue. Because the Grafton Assembly had ceased to function as an Assemblies of God Church, then under the remaining plain language of the Grafton Assembly's bylaws, title reverted to the Illinois District Council. The Illinois District Council had authority to convey the property to third parties.

Summary judgment is proper only where the pleadings, depositions and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving

party is entitled to judgment as a matter of law. This court reviews summary judgment orders *de novo* and may affirm the trial court's result on any basis the record permits, even if not the ground on which the court based its ruling. (*Sandstrom v. De Silva* (1994), 268 Ill. App. 3d 932, 935, 645 N.E.2d 345, 347.) Here, there is a dispute of fact regarding the interpretation of the ambiguous constitutions and bylaws of the Grafton Assembly and the Illinois District Council. However, because religious matters would need to be determined to resolve that ambiguity, the civil courts, as required by the United States Supreme Court in *Jones*, must recognize the Illinois District Council's decision regarding that ambiguity. Once that ambiguity is resolved as the Illinois District Council has determined, the remaining plain language of the Grafton Assembly's bylaws states title of the property at issue reverted to the Illinois District Council. Therefore, defendants were entitled to judgment as a matter of law. The trial court's grant of summary judgment for defendants is affirmed.

Affirmed.

STEIGMANN and McCULLOUGH, JJ., concur.