NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 240797-U

NO. 4-24-0797

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 11, 2025
Carla Bender
4ᵗʰ District Appellate
Court, IL

| | | |
|---|---|---|
| NATIONAL SPIRITUALIST ASSOCIATION OF CHURCHES, INC., a District of Columbia Not-for-Profit Corporation, | ) ) ) ) | Appeal from the Circuit Court of Winnebago County No. 23MR631 |
|     Plaintiff-Appellant, | ) | |
|     v. | ) | |
| CHERRY VALLEY SPIRITUALIST CAMP ASSOCIATION, INC., an Illinois Not-for-Profit Corporation, | ) ) ) | Honorable Ronald A. Barch, |
|     Defendant-Appellee. | ) | Judge Presiding |

JUSTICE KNECHT delivered the judgment of the court.
Justices Lannerd and DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*:    (1) Under the doctrine of forfeiture, the plaintiff, an authoritative ecclesiastical body, was barred from arguing on appeal that the property dispute with defendant, a former chartered member, involved a religious matter to which this court must defer in the interpretation of its bylaws.

(2) The circuit court erred in dismissing the complaint under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2022)), as the movant failed to show the plaintiff can prove no set of facts establishing its claim to the disputed property.

¶ 2    Plaintiff, National Spiritualist Association of Churches, Inc. (NSAC), appeals the

order dismissing its complaint seeking injunctive and declaratory relief against defendant, Cherry

Valley Spiritualist Camp Association, Inc. (Cherry Valley). In its complaint, NSAC argued,

when its chartered member, Cherry Valley, surrendered its charter with NSAC, Cherry Valley

was required to also surrender its records and assets to the NSAC secretary to be held in trust for at least three years. The circuit court rejected this claim, finding the claim barred by an affirmative matter under section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2022)). On appeal, NSAC argues (1) because it is a hierarchical church and the resolution of the property dispute involved a religious matter, this court must give deference to its conclusion it is entitled to the property and (2) factual questions preclude dismissal under section 2-619. We agree with the second argument and reverse and remand.

¶ 3                                    I. BACKGROUND

¶ 4                          A. The Complaint and Its Exhibits

¶ 5            On November 20, 2023, NSAC filed a verified complaint for injunctive and declaratory relief against Cherry Valley. According to the complaint, NSAC is a hierarchical religious society consisting of chartered churches, state associations, camps, and educational institutions in the United States and Canada.

¶ 6            NSAC asserts in the complaint the defendant, Cherry Valley, was incorporated in Illinois under the General Not for Profit Corporation Act of 1986 (805 ILCS 105/101.01 *et seq.* (West 2022) (Not for Profit Corporation Act). Cherry Valley was first incorporated in August 1926 and, that year, was a "chartered auxiliary of the NSAC." As a charter member, Cherry Valley became bound to NSAC's bylaws. The provision of the bylaws in dispute in this appeal appears in article VIII, section 9:

> "Whenever any chartered church society, camp, or auxiliary shall
>
> disperse, or otherwise become defunct, its board of trustees
>
> through its secretary shall surrender its charter and records and all
>
> of its assets to the Secretary of the NSAC to be held in trust for at

least three (3) years."

The next section, article VIII, section 10, further provides, in part:

> "Said inactive, or closed, that is not holding services or meetings, charteree shall not have been reactivated within three years, said assets held by the custodian or held in trust shall be devoted to and used in the support and furtherance of said cause of Modern Spiritualism in such manner as the NSAC Board of Trustees shall determine to be appropriate."

¶ 7          In 2007, Cherry Valley acquired title to real property located at 8002 Service Road, Cherry Valley, Illinois (Property).

¶ 8          According to the complaint, in September 2021, Cherry Valley "became effectively defunct and surrendered its charter to the Secretary of the NSAC pursuant to Article VIII, Section 9 of the NSAC bylaws." Attached to the complaint are two exhibits NSAC emphasizes as showing the charter existed and was surrendered. Exhibit E is a copy of a certificate showing a charter between NSAC and Cherry Valley. The charter is dated January 11, 2016. Exhibit F is a record showing Cherry Valley is a charter of NSAC. In the notes at the bottom of exhibit F, a handwritten notation states, "Charter Surrendered 9/2021." NSAC further alleged Cherry Valley, despite surrendering its charter, did not surrender its assets, including title to the Property.

¶ 9          On January 14, 2022, Cherry Valley's corporate form was involuntarily dissolved by the Illinois Secretary of State. After NSAC learned the camp had been involuntarily dissolved, NSAC made multiple attempts to obtain the cooperation from Cherry Valley's last known board of directors to secure the transfer of the camp's "remaining assets, including its real

- 3 -

property, to the NSAC." In June 2023, Ruth Maklezow, the secretary for Cherry Valley, responded with the following: "Upon looking over this letter. When the camp dissolved back in January 2022, so did the board. Out of legal consideration we can't sign papers that no longer exist."

¶ 10       In count I of the complaint, NSAC seeks an accounting. NSAC alleged Cherry Valley retained and controlled assets that should have been turned over to NSAC when it surrendered the charter. In count II, NSAC requests a declaratory judgment finding Cherry Valley, as a chartered auxiliary of NSAC, must transfer its records and assets, including title to its real property. In count III, NSAC asks the circuit court for an order compelling Cherry Valley to transfer its real property to NSAC. In Count IV, NSAC seeks a preliminary injunction barring Cherry Valley from conveying or transferring the Property until the case is decided on the merits.

¶ 11                          B. The Motion to Dismiss

¶ 12       On January 22, 2024, Cherry Valley filed a combined motion to dismiss pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2022)). Attached to its motion is an affidavit of Vicky Daniels.

¶ 13       According to the attached affidavit, Daniels was the president of Cherry Valley. When it incorporated in 1926, Cherry Valley was the First Illinois Spiritualist Camp Association at Rockford. In that same year, First Illinois Spiritualist Camp Association at Rockford became a member of Illinois Spiritualist Association, the state division of NSAC. In 1949, First Illinois Spiritualist Camp Association acquired the Property. The name was changed to Cherry Valley in 1955. In or around 1963, a church building was constructed on the Property. At the time the affidavit was signed, that building was used by Christabelle Spiritualist Church. In or around 2015, Cherry Valley's charter was involuntarily revoked by NSAC. The charter was reissued in

2016. After Cherry Valley was involuntarily dissolved in January 2022, board members applied to reinstate Cherry Valley as a corporation with the Illinois Secretary of State in October 2023. Cherry Valley had not applied for a charter with NSAC and had no intention to do so. Daniels listed seven other Spiritualist camps and churches that dissolved and were allowed to retain their property after returning their charter to NSAC.

¶ 14 In support of the portion of the motion to dismiss filed under section 2-615 of the Code (*id.* § 2-615), Cherry Valley argued the voluntary affiliation with a national organization is insufficient to overcome principles of real property law. Cherry Valley further argues, "Even if Article VIII Section 9 of the NSAC Bylaws Were of Any Legal Significance," that section does not apply to the facts of the case. Cherry Valley maintained the section applies only to "chartered" camps and Cherry Valley voluntarily surrendered its charter in September 2021, four months before the corporation dissolved. Cherry Valley further emphasized, when it applied for reinstatement with the Illinois Secretary of State, as a matter of law, it existed as if it had never been dissolved. Cherry Valley stressed it had no obligation to reassociate with NSAC.

¶ 15 Regarding the section 2-619 (*id.* § 2-619) part of its motion to dismiss, Cherry Valley simply argued NSAC lacks standing to seek relief, as it has no right to the Property.

¶ 16 C. Hearing on the Motion to Dismiss

¶ 17 At the March 2024 hearing on the motion to dismiss, Cherry Valley developed its section 2-619 standing argument. Cherry Valley argued it was not defunct or dissolved until, at the earliest, January 2022. Because, Cherry Valley argued, it had surrendered its charter in September 2021 and there were no facts to show it was defunct in September 2021, it could not be considered a chartered member as of September 2021, and article VIII, section 9 was thus inapplicable. Cherry Valley further asserted no provision in the bylaws equate the act of

surrendering the charter with a dissolution and the triggering of article VIII, section 9. Cherry Valley further emphasized the Illinois Secretary of State's reinstatement of Cherry Valley as a corporation "obviates the *** earlier dissolution," meaning it was not defunct at any time and NSAC had no cognizable right to the Property.

¶ 18 NSAC countered Cherry Valley had been defunct four months before the Illinois Secretary of State dissolved the corporation. NSAC maintained Cherry Valley was defunct in September 2021, when it surrendered the charter. At that time, according to NSAC, Cherry Valley was required to deliver its property to NSAC to hold in trust. NSAC stated there was no religious question to be resolved and NSAC had a contractual relationship with Cherry Valley.

¶ 19 D. Dismissal Order

¶ 20 On April 29, 2024, the circuit court entered its order granting Cherry Valley's section 2-619 motion to dismiss. The court made the following findings, in part, in support of its order:

> "The NSAC bases its demand for surrender of church
> property and books, in large part, upon its assertion that Cherry
> Valley was dissolved and is therefore considered 'defunct' under
> the NSAC's By-Laws. [Citation.] The NSAC's By-Laws do not
> define what it means to be 'defunct.' [Citation.]
>
> The NSAC accurately notes that Cherry Valley was
> administratively dissolved by the Illinois Secretary of State on
> January 14, 2022. From there, the NSAC posits that the Illinois
> [General Not For Profit Corporation Act of 1986 (Not For Profit
> Corporation Act) (805 ILCS 105/101.01 *et seq.* (West 2022))]

- 6 -

obligates individuals associated with the windup of Cherry Valley to transfer all Cherry Valley property and books to the NSAC. In both its written and oral arguments, NSAC cites Art. [VIII], § 9 of its own By-Laws as the basis for its demand. [Citation.]

The NSAC's complaint overlooks or omits important facts. Cherry Valley was and is properly organized under the Illinois [Not For Profit Corporation Act]. To that end the [Not For Profit Corporation Act] expressly permits the organization of a not-for[-]profit corporation for religious purposes. [Citation.] The [Not For Profit Corporation Act] further provides that not-for-profit corporations shall have perpetual existence and shall have the power to purchase, receive or take by gift, devise, or otherwise acquire, and shall have the power to own, hold, or hold as trustee, real and personal property of the corporation. [Citation.] Cherry Valley's existence and right to possess and own real and personal property is entirely separate from NSAC.

[Section] 112.40(c) of the Illinois [Not For Profit Corporation Act] does in fact declare that the administrative dissolution of a corporation terminates its corporate existence, that a dissolved corporation shall not thereafter carry on any affairs, and that the dissolved corporation may take all action necessary and appropriate to wind up and liquidate its affairs. [Citation.] Importantly, however, NSAC's complaint and argument

- 7 -

completely overlooks § 112.45(d) of the Illinois [Not For Profit

Corporation Act], which provides:

> 'Upon the filing of the application for reinstatement, the
> corporate existence for all purposes shall be deemed to
> have continued without interruption from the date of the
> issuance of the certificate of dissolution. ***.'

[Citation.]

The Illinois Secretary of State reinstated Cherry Valley as an Illinois not-for-profit corporation on October 2, 2023. Notably Cherry Valley was reinstated even *before* the NSAC filed its complaint seeking turnover of Cherry Valley property and books. Timing aside, § 12.45(d) of the Illinois [Not For Profit Corporation Act] dictates that Cherry Valley is now considered to have existed without interruption. Cherry Valley is an active Illinois not-for-profit corporation and is considered to have never been dissolved. Cherry Valley is not considered 'defunct' under the Illinois [Not For Profit Corporation Act] and based upon its reinstatement Cherry Valley has never been considered 'defunct' under the Illinois [Not For Profit Corporation Act]. This determination does not require [the court] to consider matters of church discipline, faith or ecclesiastical rule." (Emphasis in original.)

¶ 21 The circuit court concluded Cherry Valley disassociated from NSAC "and subsequently went into administrative dissolution, but Cherry Valley was reinstated on October

- 8 -

2, 2023—prior to the filing date of the NSAC's petition." After "a neutralized analysis of relevant deeds, charters, constitutions and applicable statutes," the court found "nothing that creates an express trust, an implied trust or other vested property interest favoring the NSAC." The court concluded, "as a matter of law, [the] title to the [Property] is vested solely in Cherry Valley" and dismissed the complaint.

¶ 22    This appeal followed.

¶ 23                            II. ANALYSIS

¶ 24                        A. The Standard of Review

¶ 25    This appeal follows the dismissal of a complaint based on section 2-619 of the Code (735 ILCS 5/2-619 (West 2022)). Section 2-619 authorizes a party to seek a dismissal on the ground the claim asserted is barred by an affirmative matter defeating the claim. See *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 30. A section 2-619 motion admits the legal sufficiency of the complaint, admitting well-pleaded facts and the reasonable inferences therefrom, but it also asserts an affirmative matter outside the complaint that defeats the cause of action. *Id.* ¶ 31. In considering a section 2-619 motion, the court must construe the pleadings in the light most favorable to the nonmovant and should grant the motion if the nonmovant can prove no set of facts that would support a cause of action. *Id.*

¶ 26    The affirmative matter relied upon by Cherry Valley is its claim NSAC lacks "standing," a claim under section 2-619(a)(9). See 735 ILCS 5/2-619(a)(9) (West 2022) ("That the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim."). To prove its claim, Cherry Valley relied on the deed, the bylaws, and the terms of the Not For Profit Corporation Act to show it was not defunct when it surrendered the charter and, therefore, NSAC had no cognizable right to the Property.

¶ 27 We review the circuit court's dismissal under section 2-619 *de novo. Munoz v. Bulley & Andrews, LLC*, 2022 IL 127067, ¶ 19.

¶ 28 B. NSAC's Arguments

¶ 29 In its appellant brief, NSAC's arguments boil down to two claims. First, NSAC argues, under the "neutral principles approach," it is "indisputably clear" courts must defer to NSAC on the ecclesiastical determination of whether Cherry Valley complied with its bylaws. Second, NSAC contends the dismissal was improperly granted, as the question of whether Cherry Valley was defunct is a factual one improperly decided on a section 2-619 motion to dismiss.

¶ 30 1. *Neutral Principles of Law Approach*

¶ 31 NSAC first contends the question of whether Cherry Valley has "dispersed" or become "defunct" under article VIII, section 9 is an ecclesiastical issue to which this court must defer to NSAC's judgment. NSAC argues, cases like our decisions in *Clay v. Illinois District Council of Assemblies of God Church*, 275 Ill. App. 3d 971 (1995), and *Central/Southern Illinois Synod of the Evangelical Lutheran Church in America v. Trinity Lutheran Church of Kankakee*, 2021 IL App (3d) 190292-U, prove a decision not to defer to it, the head of the hierarchal religious organization, would violate the first amendment's protection of religious freedoms (see U.S. Const., amend. I).

¶ 32 Both parties agree the correct analysis to be applied to a property dispute between religious entities is the neutral principles of law approach. This approach finds its roots in the United States Supreme Court's decision of *Jones v. Wolf*, 443 U.S. 595, 603 (1979). In *Jones*, the Court declared state courts may apply objective, well-established concepts of trust and property law to disputes within a hierarchical church organization, so long as the court must not decide a

religious matter involving church doctrine, practice, or polity. *Id.* The Court observed, under this approach, courts, when examining documents like the church constitution, "must take special care to scrutinize the document in purely secular terms." *Id.* at 605. However, in cases where the interpretation of ownership would require a court "to resolve a religious controversy, then the court must defer to the resolution of the doctrinal issue by the authoritative ecclesiastical body." *Id.*

¶ 33    Cherry Valley contends we need not resolve whether the issues presented here involve ecclesiastical matters because, it asserts, NSAC forfeited the argument by not raising it before the circuit court. Cherry Valley emphasizes, not only did NSAC not argue it was entitled to deference due to the issue being a religious one, but also NSAC, at the hearing on the motion to dismiss, affirmatively stated the question was not "religious." In support, Cherry Valley points to page 40 of the transcripts.

¶ 34    The page which Cherry Valley cites does not, however, provide a clear admission by NSAC the property dispute does not involve a religious or ecclesiastical matter. On page 40, it appears NSAC may have begun to make that very admission but was interrupted before it finished its statement:

> "So we'll start with the complaint. I think the—to answer
> your first question, I don't necessarily know how relevant it is
> because if this complaint is not asking the court to answer any or
> resolve any religious questions. In, in the bylaws and throughout
> the National Spiritualist Association of bylaws where my opposing
> counsel is referencing where the Court can look for—."

Any doubt as to the concession wanes a few paragraphs later, when NSAC clearly stated it was

not asking a religious question but a contractual one:

> "Now, they may state later in their affidavit that Ms. Daniels states that we later got our, our corporate stuff together so that we're back in good standing with the Secretary of State. Well, that doesn't remove the issue which is that they are defunct nature in 2021 which led to the administrative dissolution, triggered Section 9 and that's really what we're here for. *And it's, there's no religious question*[.] *** [I]t's the same as if this case would have come before Your Honor from a fraternal lodge from this parent fraternal lodge to a subordinate fraternal lodge[.] [W]e have a contractual relationship where they receive the benefits of the charter including the group tax exemption with the [Internal Revenue Service]. We, as the parent organization, must be able to exercise certain levels of control. We give them a great deal of freedom in our bylaws, but that's not to the derogation or to be in conflict with their charter or Section 9 and so this is not even an issue of disaffiliation this is a camp that's stopped tending to its business, became defunct and that's, that's the allegations in the complaint." (Emphasis added.)

¶ 35     Before the circuit court, NSAC was aware of the law regarding religious or ecclesiastical matters and chose not to pursue that argument. This decision may have been in light of the factual differences between this case and other cases finding religious matters were involved. See *Clay*, 275 Ill. App. 3d at 980 (finding the question of whether the church "cease[d]

- 12 -

to function as an Assemblies of God Church" to be an ecclesiastical matter involving church doctrine); see also *Central/Southern Illinois Synod*, 2021 IL App (3d) 190292-U, ¶ 26 (deferring to the Synod Council when the property dispute turned on a provision authorizing the transfer when "it is the opinion of the Synod Council that membership of a congregation has become so scattered *** to make it impractical for such congregation to fulfill the purposes for which it was organized"). NSAC has forfeited this argument. See *Jespersen v. Minnesota Mining & Manufacturing Co.*, 288 Ill. App. 3d 889, 894-95 (1997) ("An argument not raised in the circuit court in response to a motion to dismiss and presented for the first time on appeal is [forfeited]."); see also *Givens v. City of Chicago*, 2023 IL 127837, ¶ 77. ("[I]t is fundamental to our adversarial process that a party forfeits his right to complain of an error where to do so would be inconsistent with the position taken by that party in an earlier court proceeding.").

¶ 36        The case NSAC cites in its reply brief to show it did not forfeit this argument, *Rockford Memorial Hospital v. Havrilesko*, 368 Ill. App. 3d 115, 120 (2006), does not support its claim. NSAC contends *Havrilescko* states "Illinois law is clear that an argument is properly presented on appeal if it was considered by the trial court, regardless of whether it was in the plaintiff's response to the motion to dismiss." In *Havrilesko*, although the claim was not raised in response to the motion to dismiss, it was raised by the counter plaintiffs in a motion to reconsider the dismissal and when they asked the circuit court to certify issues for an interlocutory appeal. Arguments were also raised in the circuit court by the counter defendant. See *id.* Here, in contrast, not only was the issue of the religious nature of NSAC's claims not raised before the circuit court, NSAC disputed any claim the matter is religious.

¶ 37        2. *Questions of Fact Preclude a Section 2-619 Dismissal*

¶ 38                    a. Standing

- 13 -

¶ 39　　　　Before turning to NSAC's argument the dismissal of the complaint was improper due to questions of fact, we first address Cherry Valley's contention NSAC lacks standing. Cherry Valley argues NSAC lacks standing because NSAC has no right to the Property. Cherry Valley supports its contention by pointing to "facts" and arguing, essentially, NSAC's claim fails because Cherry Valley was not "chartered" at the time it was "defunct." Thus, Cherry Valley concludes, based on these facts, NSAC does not have a legally cognizable interest in the Property, and thus, has no standing.

¶ 40　　　　Courts employ a two-part test to determine standing in an action for a declaratory judgment. *Underground Contractors Ass'n v. City of Chicago*, 66 Ill. 2d 371, 375 (1977). The first part requires an actual controversy, meaning the underlying facts and issues of the case are not moot or premature and thus do not require the court to "pass judgment on mere abstract propositions of law, render an advisory opinion, or give legal advice as to future events." *Id.* The second part is the party seeking the declaration must not merely have a curiosity or concern about the outcome of the case but must "possess a personal claim, status, or right which is capable of being affected." *Id.* at 375-76.

¶ 41　　　　The burden of proving a lack of standing falls on Cherry Valley (see *Rowe v. Raoul*, 2023 IL 129248, ¶ 22), and Cherry Valley has not met this burden. Article VIII, section 9 of NSAC's bylaws demonstrates both parties may have a legal claim to the Property, depending on the circumstances of the case. Although NSAC may not ultimately prevail on its claim, standing only concerns the ability to bring the suit and not to win it. See generally *People v. Coe*, 2018 IL App (4th) 170359, ¶ 42 ("[S]tanding, by definition, is standing to bring the suit, not to maintain the suit."). NSAC has a claim or right that is capable of being affected by the resolution of the case. NSAC has standing.

¶ 42        Interestingly, despite the fact Cherry Valley labeled its section 2-619 motion to dismiss as a challenge to NSAC's standing, Cherry Valley developed a different claim before the circuit court. Cherry Valley argued a substantive claim, asserting NSAC could not prevail as the facts and the Not For Profit Corporation Act established the bylaws were not binding on Cherry Valley, as Cherry Valley is neither chartered nor defunct. This was the argument the court addressed and, on this basis, it granted the motion to dismiss. We turn to the parties' arguments on whether a factual dispute precludes the dismissal of the complaint.

¶ 43                                b. The Merits

¶ 44        The parties agree the dispute centers and turns on article VIII, section 9: "Whenever any chartered church society, camp, or auxiliary shall disperse, or otherwise become defunct, its board of trustees through its secretary shall surrender its charter and records and all of its assets to the Secretary of the NSAC to be held in trust for at least three (3) years."

¶ 45        According to the complaint, NSAC contends Cherry Valley was defunct in September 2021, when it surrendered the charter. NSAC maintains the act of surrendering the charter proves Cherry Valley to be defunct and triggered Cherry Valley's obligation to surrender its assets to the secretary of NSAC, just as it had surrendered the charter. NSAC further disputes the conclusion the Illinois Secretary of State's act of involuntarily dissolving Cherry Valley is the event that rendered Cherry Valley defunct.

¶ 46        In contrast, Cherry Valley maintains there are no alleged facts showing it was defunct in September 2021. Cherry Valley further contends nothing in the bylaws or the charter establishes the act of surrendering the charter rendered it defunct at that time or prevented it from surrendering the charter and disassociating with NSAC. Cherry Valley concedes "it was, at least at one time, in contractual privity with NSAC," but it argues once it surrendered its charter, it

- 15 -

was no longer chartered or bound by NSAC's bylaws. Cherry Valley further relies on the Not For Profit Corporation Act's provisions as showing it was not defunct until at least January 2022 and, given its reinstatement under section 112.45(d) (805 ILCS 105/112.45(d) (West 2022)), was legally not defunct, as its "corporate existence for all purposes shall be deemed to have continued without interruption from the date of the issuance of the certificate of dissolution."

¶ 47    As mentioned above, the proper approach for settling a dispute between religious entities in a hierarchal organization is the negative principles approach. Under this approach, we turn to the bylaws and, when necessary, afford the words their secular meanings.

¶ 48    The main objective in construing a contract, such as NSAC's bylaws, is to give effect to the parties' intent. See *Nord v. Residential Alternatives of Illinois, Inc.*, 2023 IL App (4th) 220669, ¶ 31. We look first to the contract's language, the best indication of the intent of the parties, and give it its plain and ordinary meaning. *Id.* The contract must be construed as a whole, with each provision viewed in light of the other provisions. *Id.*

¶ 49    As the parties agree no definition of the terms "dispersed" or "defunct" appears in the bylaws, we look to the dictionary to find the ordinary and secular meaning of these terms. Merriam-Webster defines "dispersed," in part, as "to cause to break up." Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/dispersed (last visited on Feb. 14, 2025). It defines "defunct" as "no longer living, existing, or functioning." Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/defunct (last visited on Feb. 14, 2025).

¶ 50    The circuit court, by granting the motion to dismiss, concluded the Not For Profit Corporation Act is the affirmative matter barring NSAC's claims, effectively concluding the applicability of article VIII, section 9 turns on the authority of the Illinois Secretary of State. This

conclusion is not supported by the plain and ordinary meaning of the bylaws. We initially note the obvious—the appliable sections of the bylaws do not mention the corporate structure of the chartered church and its compliance with corporate law as the basis for determining whether a charter camp is defunct or dispersed. Instead, we find in article VIII, section 10 some insight into what the parties intended when they used the terms "dispersed" and "defunct." That section refers to a charteree whose property is in a trust as a result of the application of article VIII, section 9 as: "*Said inactive, or closed, that is, not holding services or meetings*." (Emphasis added.) Plainly, the language shows the parties intended "defunct" to mean something more than simply the charteree's failure to comply with corporate requirements, such as paying fees, filing annual reports, or maintaining a registered agent—all bases for involuntarily dissolving a not-for-profit corporation. See 805 ILCS 105/112.35 (West 2022). The dissolution and reinstatement of Cherry Valley by the Illinois Secretary of State as a not-for-profit corporate entity are not the conclusive factors in considering whether and when Cherry Valley was defunct.

¶ 51        Our decision finding the status of a corporation under the Not For Profit Corporation Act is not the determining factor in considering whether a charter member is defunct or dispersed does not mean that status is irrelevant to that same question. The status is indeed relevant to the issue of whether Cherry Valley was defunct or dispersed in September 2021. This fact, coupled with the fact Cherry Valley surrendered its charter in September 2021, viewed in the light most favorable to NSAC and taken as true, supports the conclusion Cherry Valley was defunct when it surrendered the charter in September 2021. In addition, the Cherry Valley board was also not functioning. These facts, taken as true, give rise to the inference Cherry Valley was not "living" or "functioning" in September 2021. The section 2-619 motion should not have been granted, as such a motion should be granted only "if the plaintiff can prove no set of facts that

would support a cause of action." *Reynolds*, 2013 IL App (4th) 120139, ¶ 31.

¶ 52     We further note NSAC argues, for the first time in its reply brief, Cherry Valley was not permitted to disaffiliate from NSAC. It contends the only provision that mentions a charter member leaving the NSAC is article VIII, section 9 and concludes, because Cherry Valley surrendered its charter, it was defunct. We need not decide this issue for two reasons. First, arguments not raised in the appellant brief "are forfeited and shall not be raised in the reply brief." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Second, we already determined the section 2-619 motion to dismiss was improperly granted.

¶ 53                          III. CONCLUSION

¶ 54     We reverse the circuit court's order dismissing NSAC's complaint and remand for further proceedings.

¶ 55     Reversed and remanded.